THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 NOV 18  AM 10 02

STEPHAN HARRIS, CLERK
CHEYENNE

MIKAELA DZIADOSZ,

    Plaintiff,

    v.

FMC CORPORATION and
UNITED STEELWORKERS UNION
LOCAL 13214,

    Defendants.

Case No. 1:13-CV-00043-ABJ

---

## OPINION AND ORDER GRANTING DEFENDANT LOCAL 13214'S MOTION FOR SUMMARY JUDGMENT
### AND
## OPINION AND ORDER GRANTING DEFENDANT FMC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

The following have come before the Court for consideration: Defendant, United

Steelworkers Union Local 13214's ("Defendant Local 13214") motion for summary

judgment (Doc. No. 64), Plaintiff's response (Doc. No. 76), and Defendant Local 13214's

reply (Doc. No. 82); and Defendant FMC Corporation's ("Defendant FMC") motion for

partial summary judgment (Doc. No. 66), Plaintiff's response (Doc. No. 75), and

Defendant FMC's reply (Doc. No. 83).  After reviewing the parties' submissions, the

applicable law, and being fully advised, the Court finds that Defendant Local 13214's

motion for summary judgment (Doc. No. 64) should be **GRANTED** and that Defendant

1

FMC's motion for partial summary judgment (Doc. No. 66) should be **GRANTED** for the reasons stated below.

## BACKGROUND

Plaintiff Mikaela Dziadosz was employed by Defendant FMC from April or May of 2008[1] until November of 2011. Doc. No. 75. Defendant Local 13214 is a local union chartered by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). Doc. No. 65. Defendant Local 13214 and USW are engaged in representing hourly employees at Defendant FMC's facilities in Granger and Westvaco, Wyoming. *Id.* The USW, on behalf of Defendant Local 13214, and Defendant FMC are parties to a collective bargaining agreement that governs the terms and conditions of employment. *Id.* Plaintiff was a member of the Union and her employment with Defendant FMC was governed by the collective bargaining agreement. Doc. No. 67.

On the night of October 19, 2011, Plaintiff and her co-employee Corey Wold were asked by Plaintiff's supervisor to repair a coal dust leak in the crusher building. Doc. No. 75. Plaintiff and Mr. Wold repaired the leak. *Id.* Plaintiff and Mr. Wold claim they repaired the leak using an epoxy called "pig putty," but they were accused of welding a patch. *Id.* Because of the danger of fire or explosion from coal dust, welding in the

---

[1] Plaintiff erroneously states this date as 1998. Doc. Nos. 1, 31, 75. Plaintiff testified in her deposition that she began her employment with Defendant FMC sometime around April or May of 2008. Doc. No. 65–11, p. 2.

crusher building requires a permit. *Id.* Both Plaintiff and Mr. Wold deny welding a patch. Doc. No. 65.

On October 26, 2011, Plaintiff was first interviewed about the incident. Doc. No. 75. Plaintiff was unaware that she could be facing discipline or discharge, and was not offered Union representation. Doc. No. 65. On November 11, 2011, Plaintiff was again interviewed about the incident. Doc. No. 75. At this meeting, Leonard Wilson was present in his capacity as a shop steward. *Id.* On November 16, 2011, Plaintiff was called into a meeting on her day off. Doc. No. 65. Mr. Wilson as shop steward and Defendant Local 13214 President Monte Morlock were present. *Id.* On November 22, 2011, Plaintiff and Mr. Wold were terminated for welding in the crusher building without a permit. *Id.*

Within a week after Plaintiff and Mr. Wold were terminated, they met with Defendant FMC's Resident Manager to appeal their terminations. Doc. No. 65. Mr. Morlock represented them at this meeting. *Id.* The Resident Manager denied their appeal, and the Union immediately decided to appeal the terminations to arbitration. *Id.*

Through a strike process, Charles Loughran was selected to hear Plaintiff's arbitration and John Swanson was selected to hear Mr. Wold's. *Id.* Mr. Wold's arbitration was held on May 22, 2012, and Plaintiff's was held on May 24, 2012. *Id.* Mr. Morlock represented Plaintiff at her arbitration and Mr. Wold at his. *Id.* Arbitrator Swanson ordered Defendant FMC to reinstate Mr. Wold. *Id.* Arbitrator Loughran upheld Defendant FMC's termination of Plaintiff. *Id.*

On February 26, 2013, Plaintiff filed a Complaint alleging only a claim for relief based on a violation of the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA"). Doc. No. 1. Defendant Local 13214 filed an Answer on July 9, 2013 generally denying Plaintiff's claims and asserting affirmative defenses. Doc. No. 12. Defendant FMC filed an Answer on July 24, 2014 generally denying Plaintiff's claims and asserting affirmative defenses. Doc. No. 21.

On October 16, 2014, Plaintiff filed an unopposed motion to amend her Complaint. Doc. No. 29. Plaintiff asserted she received a right to sue letter. *Id.* On October 31, 2014, Plaintiff filed her Amended Complaint. Doc. No. 31. Plaintiff's Amended Complaint asserted the following against both Defendants: (1) a hybrid claim under the NLRA and the LMRA; (2) a claim of sex based discrimination under Title VII; (3) a claim of retaliatory discharge under Title VII; and (4) a claim of intentional infliction of emotional distress. *Id.*

Defendant Local 13214 filed an Answer to the Amended Complaint on October 28, 2013, generally denying Plaintiff's claims and asserting affirmative defenses. Doc. No. 34. Also on October 28, 2013, Defendant FMC filed an Answer to the Amended Complaint similarly denying Plaintiff's claims and alleging affirmative defenses. Doc. No. 33.

On August 29, 2014, Defendant Local 13214 filed a motion for summary judgment. Doc. No. 64. Plaintiff responded to that motion on September 12, 2014. Doc. No. 76. Defendant Local 13124 filed its reply on September 19, 2014. Doc. No. 82. Also on August 29, 2014, Defendant FMC filed a motion for partial summary judgment.

Doc. No. 66. Plaintiff responded to Defendant FMC's motion on September 12, 2014. Doc. No. 75. Defendant FMC filed its reply on September 19, 2014. Doc. No. 83. The Court finds that these matters are fully briefed and are ripe for disposition.

The Court will first address the arguments related to Plaintiff's intentional infliction of emotional distress claim against Defendant FMC. Next, the Court will address Plaintiff's intentional infliction of emotional distress claim against Defendant Local 13214. Finally, the Court will address the arguments related to the breach of the duty of fair representation in the hybrid claim under the NLRA and the LMRA.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or

(2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

### I. Intentional Infliction of Emotional Distress

Plaintiff brought a claim of intentional infliction of emotional distress against both Defendant Local 13214 and Defendant FMC. Doc. No. 31. Both Defendants moved for summary judgment on Plaintiff's claims of intentional infliction of emotional distress arguing that the claims are preempted by federal law, and even if the claims are not preempted, Plaintiff failed to make a showing sufficient to establish that Defendants' conduct was extreme and outrageous. Doc. Nos. 65, 67.

#### A. Defendant FMC is entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

The first question the Court must address is whether Plaintiff's claim of intentional infliction of emotional against Defendant FMC is preempted by federal law and if it is not preempted whether the conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. The Tenth Circuit Court of Appeals explained, "preemption arises only when an 'evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract.'" *Mowry v. United Parcel Service*, 415 F.3d 1149, 1152 (10th Cir. 2005) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). The Tenth Circuit further stated, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)) (internal quotation marks omitted). The issue of whether Plaintiff's intentional infliction of emotional distress claim against Defendant

FMC could be resolved without interpreting the collective bargaining agreement is a nuanced and difficult one.

However, if the underlying intentional infliction of emotional distress claim cannot proceed, then the Court need not address the issue of preemption. For the purposes of this Order, the Court assumes, without deciding, that Plaintiff's claim of intentional infliction of emotional distress against Defendant FMC is not preempted by federal law. The question the Court must decide then becomes whether Plaintiff has made a showing sufficient to establish extreme and outrageous conduct on the part of Defendant FMC as to permit recovery. For the reasons discussed below, the Court finds that Plaintiff has failed to make a sufficient showing to establish extreme and conduct on the part of Defendant FMC. Because the Court finds that Plaintiff's underlying intentional infliction of emotional distress claim against Defendant FMC fails, it need not address the arguments related to preemption of that claim.

In its motion for partial summary judgment, Defendant FMC argues that Plaintiff failed to allege extreme and outrageous conduct. Doc. No. 67. In response to Defendant FMC's motion, Plaintiff argues that the following conduct was extreme and outrageous: (1) Defendant FMC's employees sexually harassed Plaintiff; (2) Defendant FMC retaliated against Plaintiff by terminating her because she asked to be protected from Chris Dziadosz and complained of sexual harassment; (3) Defendant FMC falsely and knowingly accused Plaintiff of welding a patch; (4) Defendant FMC offered Plaintiff's male co-employee "safe haven" if he would separate himself from Plaintiff for fifteen minutes; and (5) Defendant FMC suborned perjury from a co-employee to implicate

Plaintiff in the act of welding a patch. Doc. No. 75. In reply, Defendant FMC argues that even accepting all the allegations as true for the purposes of summary judgment, the asserted conduct was not extreme and outrageous. Doc. No. 83.

To recover for intentional infliction of emotional distress under Wyoming law the plaintiff must prove that the defendant acted in an extreme and outrageous manner and that the defendant intentionally or recklessly caused the plaintiff severe emotional harm. *E.g.*, *Cook v. Shoshone First Bank*, 2006 WY 13, 126 P.3d 886 (Wyo. 2006); *Hoflund v. Airport Golf Club*, 2005 WY 17, 105 P.3d 1079 (Wyo. 2005). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoflund*, 105 P.3d at 1089 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). As the Tenth Circuit Court of Appeals explained, "a claim for the intentional infliction of emotional distress makes actionable only the most egregious conduct." *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 688 (10th Cir. 2007).

In *Worley v. Wyoming Bottling Co.*, the Wyoming Supreme Court explained, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." 1 P.3d 615, 628 (Wyo. 2000) (quoting *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo. 1997)). When considering a motion for summary judgment, "the court, as a matter of law, makes preliminary determinations regarding the outrageousness of the conduct and the severity of the emotional distress." *Kanzler*, 937 P.2d at 1341. Therefore, the Court must act as the gatekeeper for determining whether the

9

conduct is extreme and outrageous. *Herrera*, 474 F.3d at 688 (citing *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1066 (Wyo. 1986)).

As a preliminary matter, the Court must determine whether Plaintiff can rely on her Title VII claims to form the basis of her intentional infliction of emotional distress claim. In response to Defendant FMC's motion for partial summary judgment, Plaintiff asserts that her intentional infliction of emotional distress claim is based in part "on the same operative facts as the Title VII claim." Doc. No. 75. In reply, Defendant FMC argues that Plaintiff did not allege Title VII as a basis for her claim of intentional infliction of emotional distress and that even if Plaintiff's intentional infliction of emotional distress claim arises under Title VII, Title VII preempts Plaintiff's claim. Doc. No. 83.

Plaintiff alleged two Title VII claims in her Complaint, "Discrimination based on sex in violation of Title VII" and "Retaliation under Title VII." Doc. No. 31. In her claim for intentional infliction of emotional distress, Plaintiff alleged the following: "Plaintiff incorporates each allegation above into this cause of action." *Id.* Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Plaintiff is required only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). The Court finds that Plaintiff's plain statement of her claim in her Amended Complaint was

sufficient to give Defendant FMC notice that her intentional infliction of emotional distress claim is based on, among other things, her Title VII claims.

Plaintiff asserts in her response to Defendant FMC's motion for partial summary judgment that sexual harassment and retaliation form the basis of her intentional infliction of emotional distress claim. Doc. No. 75. Plaintiff does not assert any of the other bases on which her claim for "Discrimination based on sex in violation of Title VII" rests. *See* Doc. Nos. 31, 75. Accordingly, the Court will only address the bases of sexual harassment and retaliation.

Defendant FMC also argues that if Plaintiff's claim of intentional infliction of emotional distress can be based on Title VII, then the claim is preempted by Title VII. Defendant FMC cites to *Mobley v. Donahue*, an unpublished Tenth Circuit opinion, for the proposition that Title VII preempts claims of discrimination and retaliation. 498 Fed. App'x 793, 796–97 (10th Cir. 2012) (unpublished). *Mobley* involved a federal employee bringing claims of discrimination and retaliation. *Id.* In *Brown v. General Services Administration*, United States Supreme Court stated that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. 820, 835 (1961). Defendant FMC also cites to *Pretlow v. Garrison*, another unpublished Tenth Circuit opinion. 420 Fed. App'x 798, 801 (10th Cir. 2011) (unpublished). In *Pretlow*, the Tenth Circuit Court of Appeals concluded "[b]ecause Mr. Pretlow was a federal employee, his claims implicate three distinct lines of federal preemption/remedial exclusivity. In so far as he complains of discrimination and associated retaliatory

11

conduct, his exclusive remedy is provided by Title VII . . . ." *Id.* Plaintiff, however, was not a federal employee.

The question of whether Title VII preempts sex discrimination claims when the employee is not a federal employee is more nuanced. The language of Title VII makes clear that preemption of state law remedies was not intended: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State . . . ." 42 U.S.C. § 2000e-7 (2012). As the United States Supreme Court stated, "Sections 708 and 1104 severely limit Title VII's pre-emptive effect." *California Federal Sav. And Loan Ass'n v. Guerra*, 479 U.S. 272, 283 (1987). The Court was unable to locate any United States Supreme Court's opinion or Tenth Circuit Court of Appeals' opinion directly on point as to whether Title VII preempts state law claims against a private employer.

However, several District Courts in this circuit have addressed the issue of whether Title VII preempts state law claims against a private employer and concluded that "in an employment discrimination action, Title VII does not subsume or preempt a private employee's state law claims." *E.g., Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1123 (D. Colo. 1999); citing *Visor v. Sprint/United Management Co.*, 965 F. Supp. 31 (D. Colo. 1997)). Accordingly, the Court finds that Plaintiff's claim of intentional infliction of emotional distress based on sexual harassment and retaliation is not preempted by Title VII.

**1. Plaintiff's allegation of sexual harassment was not so extreme and outrageous as to permit recovery for intentional infliction of emotional distress.**

First, Plaintiff argues that Defendant FMC's conduct was extreme and outrageous because of sexual harassment she experienced at work. In *Kanzler v. Renner*, the Wyoming Supreme Court recognized that "inappropriate sexual conduct in the workplace can, upon sufficient evidence, give rise to a claim of intentional infliction of emotional distress." 937 P.2d at 1341–42. The court enumerated four factors that should be considered when determining whether inappropriate sexual conduct is outrageous: (1) an abuse of power; (2) repeated incidents or a pattern of harassment; (3) unwelcome touching or offensive, non-negligible physical contact; and (4) retaliation for refusing or reporting sexually-motivated advances. *Id.* at 1341.

In *Kanzler*, the plaintiff alleged "repeated incidents over a period of several weeks in which [the defendant] stared at her, followed her, and subjected her to sexually-motivated advances and physically intimidating behavior, each escalating in intensity and severity." *Id.* at 1343. The plaintiff also alleged "unwelcome, non-negligible physical contact wherein [the defendant] touched and hugged her even after she repeatedly rebuffed his advances, and ultimately confined her in a closet and rubbed his crotch against her leg." *Id.* The Wyoming Supreme Court concluded that "reasonable persons could differ in their conclusions as to whether [the defendant's] conduct was extreme and outrageous." *Id.*

Here, believing the evidence of Plaintiff and drawing all justifiable inferences in favor of Plaintiff, the Court finds that two of the *Kanzler* factors are present. First,

Plaintiff asserts that John Morris, her supervisor, sexually harassed her. Doc. No. 75–1, p. 12–18. Thus, a reasonable inference can be drawn that there was an abuse of power. Second, Plaintiff asserts that Mr. Morris was her supervisor from December of 2010 until her termination in November of 2011 and during this time he "made many sexist comments." *Id.* at 13. Accordingly, Plaintiff made a showing sufficient to establish repeated incidents or a pattern of harassment. Plaintiff, however, does not assert any evidence of unwelcome touching or offensive, non-negligible physical contact. *See* Doc. No. 75. Plaintiff also does not assert any evidence of sexually-motivated advances or retaliation therefrom. *See id.*

The Court finds that the type of conduct present in *Kanzler* differs greatly from the conduct alleged in the present case. Plaintiff's allegations of sexual harassment arguably satisfy two of the *Kanzler* factors. However, Plaintiff does not allege any unwelcome touching or sexually-motivated advances. Balancing the *Kanzler* factors, the Court finds that Plaintiff has not made a showing sufficient to establish that Defendant FMC's alleged sexual harassment was extreme and outrageous.

The Court is not unmindful of the nature of the sexual harassment alleged by Plaintiff and notes that Plaintiff may still pursue her Title VII claim based on the same alleged conduct. In *Herrera v. Lufkin Industries, Inc.*, the Tenth Circuit Court of Appeals recognized that conduct actionable under Title VII does not necessarily rise to the level of outrageousness required for intentional infliction of emotional distress. 474 F.3d at 688 ("[A] claim for the intentional infliction of emotional distress makes actionable only the most egregious conduct. The Wyoming Supreme Court adopted this tort claim with that

limitation explicitly in mind."). This Court finds that Plaintiff has failed to make a sufficient showing to establish that the alleged sexual harassment is "so outrageous in character, and so extreme in degree" as to permit recovery for intentional infliction of emotional distress. *See Worley*, 1 P.3d at 628.

**2. Plaintiff's allegation of retaliation is not so extreme and outrageous as to permit recovery for intentional infliction of emotional distress.**

Second, Plaintiff argues that Defendant FMC's conduct was extreme and outrageous in allegedly retaliating against her for asking Defendant FMC to enforce her protection order at work and for reporting sexual harassment. Defendant FMC argues that the alleged retaliation does not rise to the level of outrageousness required by the tort of intentional infliction of emotional distress. Doc. No. 67. Plaintiff did not squarely address this argument. Doc. Nos. 75, 76. The Court finds that Plaintiff's allegation that she was unlawfully terminated and suffered severe emotional distress "is no more than a claim [she] was fired without good cause and as a result suffered emotional distress." *See Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371 (10th Cir. 1989). Accordingly, the retaliatory discharge "allegation does not support a claim for intentional infliction of emotional distress." *Id.*

**3. Plaintiff's allegations that Defendant FMC falsely and knowingly accused her of welding a patch and offering her male co-employee "safe haven" if he could separate himself from Plaintiff for fifteen minutes are not so extreme and outrageous as to permit recovery.**

Plaintiff's third and fourth alleged grounds for her claim of intentional infliction of emotional distress are similar and therefore will be addressed together. Plaintiff argues that Defendant FMC's conduct was extreme and outrageous in falsely and knowingly

15

accusing her of welding a patch, and in offering her male co-employee "safe haven" if he would separate himself from Plaintiff for fifteen minutes. Under the standard adopted by the Wyoming Supreme Court, extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Worley*, 1 P.3d at 628 (quoting Restatement (Second) of Torts § 46 cmt. d). The Court finds that this conduct is not so extreme and outrageous as to be actionable under the tort of intentional infliction of emotional distress.

### 4. Plaintiff's allegation of suborning perjury cannot as a matter of law form the basis of a claim for intentional infliction of emotional distress.

Finally, Plaintiff argues that Defendant FMC's conduct was extreme and outrageous by suborning perjury to implicate Plaintiff in the act of welding a patch. Generally, "no civil action lies for damages resulting from false statements made under oath constituting perjury or from subornation of false testimony." 60A Am. Jur. 2d *Perjury* § 7 (2014); *see Elmore v. Van Horn*, 844 P.2d 1078, 1085 (Wyo. 1992) (citing *Collins v. Walden*, 613 F. Supp. 1306 (N.D. Ga. 1985) ("[I]f a witness gave knowingly false and malicious testimony, the witness could be found guilty of perjury and face criminal penalties. Thus, a witness is subject to criminal penalties and not entirely free to testify falsely, but the witness still will not be subject to a civil action for damages.").

In *Elmore v. Van Horn*, the Wyoming Supreme Court held that a witness has immunity from civil liability for testifying falsely and determined that "[b]ecause the conduct that serves as the basis for the intentional infliction claim is the very same

16

conduct for which there is immunity as a matter of law . . . , we find that this claim was correctly dismissed." 844 P.2d at 1085–1086. As one court aptly explained, "[i]f the Court extended the cause of action for intentional infliction of emotional distress . . . to include liability for witnesses who testify falsely . . . the rule against civil actions for perjury would be meaningless." *Alllin v. Schuchmann*, 886 F. Supp. 793, 800 (D. Kan. 1995); *see also Good v. Board of Cnty. Com'rs of Shawnee Cnty.*, 209 F. Supp. 2d 1124, 1130 n.2 (D. Kan. 2002) ("Plaintiff has alleged only that [Defendant] committed perjury in testifying at his arbitration hearing. Such an allegation in Kansas does not give rise to an outrage claim.").

Here, Plaintiff alleged that Defendant FMC's conduct was extreme and outrageous in suborning false testimony. Plaintiff cannot maintain a civil action for suborning false testimony. Therefore, the allegations of suborning false testimony cannot form the basis of her intentional infliction of emotional distress claim.

## B. Defendant Local 13214 is entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

The second question the Court must address is whether Plaintiff's claim of intentional infliction of emotional distress against Defendant Local 13214 is preempted by federal law and if it is not preempted by federal law whether the conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. Unlike Plaintiff's claim for intentional infliction of emotional distress against Defendant FMC, the preemption issue in Plaintiff's claim for intentional infliction of emotional distress against Defendant Local 13214 is clear. For the reasons stated below, the Court finds

that Defendant Local 13214 is entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

As discussed above, "preemption arises only when an 'evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract.'" *Mowry*, 415 F.3d at 1152 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 209). Further, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* (quoting *Lingle*, 486 U.S. at 410) (internal quotation marks omitted). In the context at issue, the Tenth Circuit Court of Appeals has explained that "[w]here a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations." *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) (quoting *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000)) (internal quotation marks omitted).

Here, Defendant Local 13214 argues that Plaintiff's claim for intentional infliction of emotional distress is based on the same facts as her claim for breach of the duty of fair representation. Doc. No. 65. Plaintiff failed to respond to Defendant Local 13214's preemption arguments in a meaningful manner. Doc. Nos. 75, 76. The Court finds that Plaintiff's intentional infliction of emotional distress claim against Defendant Local 13214 is preempted by federal law because it is based on the same conduct as her claim for breach of the duty of fair representation. Accordingly, Defendant Local 13214 is

entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

## II. Hybrid § 301

The second question the Court must address is whether Defendants are entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim. In order to succeed in a hybrid § 301 claim, a plaintiff must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *E.g.*, *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) ("an employee can sue his employer for a breach of the collective-bargaining agreement only if he shows that the union breached its duty of fair representation in its handling of the grievance"); *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164 (1983). Defendant Local 13214 argues there is no genuine dispute as to any material fact in Plaintiff's breach of the duty of fair representation claim. Doc. No. 65. Rather than argue that it did not breach the collective bargaining agreement, Defendant FMC only argues that if Defendant Local 13214 is entitled to judgment as a matter of law on Plaintiff's breach of the duty of fair representation, then Defendant FMC is entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim. Doc. No. 67.

The duty of fair representation is breached "when the union's conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1966); *e.g.*, *Terry*, 494 U.S. at 563; *DelCostello*, 462 U.S. at 163–65. The Tenth Circuit Court of Appeals explained, "[a] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's

19

behavior is so far outside a wide range of reasonableness as to be irrational." *Schwartz v. Brotherhood of Maintenance of Way Employees*, 264 F.3d 1181, 1187 (10th Cir. 2001) (quoting *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993)) (internal quotation marks omitted). A union's conduct is discriminatory if it is "invidious." *Id.* Bad faith requires a showing of fraudulent, deceitful, or dishonest conduct. *Id.* Furthermore, "mere negligence on the part of a union does not rise to the level of a breach of the duty of fair representation." *Le'Mon v. N.L.R.B.*, 952 F.2d 1203, 1205 (10th Cir. 1991) (quoting *Peters v. Burlington N. R.R.*, 931 F.2d 534, 538 (9th Cir. 1991)) (internal quotation marks omitted). A court will not replace "the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances" with its own. *Young v. United Auto. Workers Labor Employment and Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996).

In addition to proving that the union's actions were arbitrary, discriminatory, or done in bad faith, the plaintiff must also prove that the breach "contributed to the erroneous outcome." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976); *see e.g., Menges v. ABF Frieght System, Inc.*, 385 Fed. App'x 814, 818 n.1 (10th Cir. 2010) (unpublished) ("the requisite causal connection is between the union's breach of the duty of fair representation and an 'erroneous outcome'"); *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1242–43 (10th Cir. 1998)). As the United States Supreme Court explained, "an employee may go behind a final and binding award under a collective-bargaining agreement and seek relief against [her] employer and union only when [she] demonstrates that [her] union's breach of its duty seriously undermined the integrity of

the arbitral process." *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 61 (1981) (internal quotation marks omitted).

Even believing the evidence of Plaintiff and drawing all justifiable inferences, Plaintiff failed to make a showing sufficient to establish the existence of the elements required for a breach of the duty fair representation "despite the host of examples [s]he cites as evidence of . . . deficient performance." *See Menges*, 385 Fed. App'x at 818. For ease of discussion, the Court categorizes her complaints as follows: (1) Mr. Morlock failed to request a single arbitration for both Mr. Wold and Plaintiff; (2) Mr. Morlock kept the name of a witness from Plaintiff; (3) Mr. Morlock failed to subpoena and present certain evidence at Plaintiff's arbitration; (4) Mr. Morlock failed to keep the arbitrator from hearing evidence of Plaintiff's prior disciplinary infractions, and (5) Mr. Morlock had an "undisclosed conflict of interest."

### A. Morlock's Alleged Failure to Request a Single Arbitration

The first issue the Court must consider is whether Mr. Morlock's alleged failure to request a single arbitration was arbitrary, discriminatory, or done in bad faith; and if it was, whether the breach contributed to an erroneous outcome. Plaintiff asserted that Defendant Local 13214's failure to request a single arbitration was a breach of the duty of fair representation. Doc. No. 76. In response, Defendant Local 13214 argues that its decision was "an attempt to get the best result independently for each grievant." Doc. No. 82. Mr. Wold was employed by Defendant FMC for a significant period of time and had no disciplinary infractions. On the other hand, Plaintiff was a relative newcomer and had several disciplinary infractions. Believing the evidence of the Plaintiff and drawing

all justifiable inferences in her favor, the Court finds that Defendant Local 13214's decision not to request a single decision was not arbitrary, discriminatory, or done in bad faith.

Assuming for the sake argument that Defendant Local 13214's decision not to request a single arbitration was a breach of the duty of fair representation, Plaintiff must also make a showing sufficient to establish that the breach contributed to the erroneous outcome. Plaintiff did not address this issue in her response. *See* Doc. No. 76. Defendant Local 13214 asserted that even if it had requested a single arbitration, the decision to arbitrate the cases jointly or separately would have ultimately rested in the hands of Defendant FMC. Doc. No. 65-3. At least one witness testified that even if Defendant Local 13214 had requested a single arbitration, Defendant FMC would have refused to allow it. Doc. No. 65-5.

Perhaps Plaintiff may be arguing that the result of the separate arbitrations is evidence enough that separating the arbitrations contributed to an erroneous outcome. However, even if there had been a single arbitration, the arbitrator may have found that Plaintiff, Mr. Wold, or both performed the weld. For example, Mr. Wold's arbitrator determined that neither Mr. Wold nor Plaintiff performed the weld:

> There is no dispute that Mikaela, a Safety Committee person and Corey, a 17-year employee are knowledgeable and to imagine they would ignore a simple solution for an unsafe solution, doesn't seem probable and the evidence certainly does not support such a conclusion. . . . There is no meaningful evidence that would prove the claim that he or his co-worker performed the violation in question.

Doc. No. 65-1, p. 117.  On the other hand, Plaintiff's arbitrator found that both Plaintiff

and Mr. Wold performed the weld:

> Neither the Union nor any witnesses offered any possible explanation as to
> who else may have done the welding. . . . The strong weight of the evidence
> points to either Mr. Wold or Ms. Dziadosz or both.  For purposes of this
> case, it doesn't make any difference which one actually performed the
> welding.  They would have acted as a team to accomplish the work and to
> fabricate their story.  Both are equally complicit for having performed, or
> assisted in, the welding and in cooperating in the fabrication of a story to
> explain their alleged non-involvement.

*Id.* at 133.  Had both cases been arbitrated together and heard by the arbitrator in

Plaintiff's case, both terminations would likely have been upheld.  Had both cases been

heard by the arbitrator in Mr. Wold's case, both employees would likely have been

reinstated.  The Court finds that Plaintiff has not made a sufficient showing to establish

that Defendant Local 13214's failure to request a single arbitration contributed to an

erroneous decision.

### B. Morlock's Alleged Failure to Provide Plaintiff with the Name of a Witness

The second issue the Court must consider is whether Mr. Morlock's alleged failure

to provide Plaintiff with the name of a witness was arbitrary, discriminatory, or done in

bad faith; and if it was, whether the breach contributed to an erroneous outcome.

Plaintiff contends that Defendant Local 13214 kept the name of a witness, Jason Braden,

from her and if she had known he would testify, she could have produced a recorded

message showing his bias.  Doc. No. 76.  In response, Defendant Local 13214 explained

that it did not provide Mr. Braden's name to Plaintiff because it thought she might try to

contact him and thereby compromise the integrity of the arbitration.  Doc. No. 65.  The

Court will not substitute its own judgment for that of Defendant Local 13214 on the question of whether it should have disclosed the name of Mr. Braden to Plaintiff and finds that Defendant Local 13214's decision was not arbitrary, discriminatory, or done in bad faith.

Moreover, there is no genuine dispute of material fact that Defendant Local 13214's decision not to provide Plaintiff with Mr. Braden's name contributed to an erroneous outcome. Plaintiff presumably argues that the failure to identify Mr. Braden contributed to an erroneous outcome because if she had known the witness was Mr. Braden, she "could have produced [a] phone message demonstrating witness bias and animosity." *See* Doc. No. 76. However, Plaintiff testified that she knew the unnamed witness was Mr. Braden because he testified during Mr. Wold's arbitration. Doc. No. 65-11, p. 55. No reasonable juror could find that Defendant Local 13214's decision not to provide Mr. Braden's name to Plaintiff contributed to an erroneous outcome when Plaintiff knew beforehand that he would testify.

### C. Morlock's Alleged Failure to Subpoena and Present Certain Evidence

The third issue the Court must consider is whether Mr. Morlock's alleged failure to subpoena and present certain evidence was arbitrary, discriminatory, or done in bad faith; and if it was, whether the breach contributed to an erroneous outcome. Plaintiff asserted that Defendant Local 13214 should have subpoenaed and presented various work orders, Facebook records, and telephone records. Doc. No. 76. Plaintiff also asserts that Defendant Local 13214 should have argued that her termination was tied to her sex. *Id.*

In response to the argument that Defendant Local 13214 should have subpoenaed and presented various work orders, Defendant Local 13214 asserts that it "obtained a list of all work orders for repairs on the chute, which it reviewed in preparation for [the] arbitrations" and ultimately determined the work orders were not useful to Plaintiff's case. Doc. No. 83. It is not clear to the Court how a failure to subpoena the work orders was a breach of the duty of fair representation when Defendant Local 13214 had a list of the work orders in its possession prior to her arbitration. The Court will not substitute its own judgment for that of Defendant Local 13214 in deciding not to present the work orders at Plaintiff's arbitration. The Court finds that Defendant Local 13214's decision to not subpoena and present the work orders was not arbitrary, discriminatory, or done in bad faith.

In response to the arguments about Plaintiff's Facebook and telephone records, Defendant Local 13214 posits that "neither Plaintiff nor [Defendant Local 13214] could have known before the arbitrations that the Company was accusing her of welding during the time when she was on Facebook." Doc. No. 82. In assessing whether a union's actions are arbitrary, the actions must be considered "in light of the factual and legal landscape at the time." *Schwartz*, 264 F.3d at 1187 (quoting *Aguinaga*, 993 F.2d at 1470) (internal quotation marks omitted). Even believing the evidence of Plaintiff, prior to the arbitration, Defendant Local 13214 could not have known the alleged time frame would change at the arbitration and make the Facebook and telephone records relevant. Accordingly, the Court finds that Defendant Local 13214's decision not to subpoena

Plaintiff's Facebook and telephone records was within the wide range of reasonableness and not discriminatory or done in bad faith.

In response to the argument that Defendant Local 13214 should have argued Plaintiff "was being subjected to sex based discrimination," Defendant Local 13214 explained that it did not make the argument because "it was a weak argument, given that Wold, a male, was also terminated at the same time." Doc. No. 65. As stated above, the Court will not substitute its own judgment for that of a union in deciding what arguments to make. As the Ninth Circuit Court of Appeals explained, "If a union provides an explanation for having ignored a particularly strong argument during a grievance procedure that is based on reasoning, we will not question whether the reasoning was faulty or not." *Peters v. Burlington N. R.R. Co.*, 931 F.2d 534, 540 (9th Cir. 1990); *see Buck v. CF & I Steel, L.P.*, 531 Fed. App'x 936, 938 (10th Cir 2013) (unpublished) (quoting *Peters*, 931 F.2d at 540) ("The court went on to fault the union for offering no explanation *to it* . . . ."). The Court finds that Defendant Local 13214's decision not to argue that Plaintiff's termination was based on sex discrimination was not arbitrary, discriminatory, or done in bad faith.

### D. Morlock's Alleged Failure to Keep Out Certain Evidence

The fourth issue the Court must consider is whether Mr. Morlock's alleged failure to keep the arbitrator from hearing certain evidence was arbitrary, discriminatory, or done in bad faith; and if it was, whether the breach contributed to an erroneous outcome. Plaintiff asserts that Defendant Local 13214 breached its duty of fair representation when it allowed the arbitrator "to hear of unrelated minor company infractions as if they were

26

material to the decision to terminate the Plaintiff when the company had excluded them from consideration." Doc. No. 76. In response, Defendant Local 13214 asserts that an arbitrator may consider a grievant's past record and that Plaintiff's termination notice mentioned one of the infractions. Docs. No. 82; 82–5. Plaintiff's termination notice stated the following:

> Based on the outcome of our investigation if the damage to the company vehicle[] was the only violation[,] it would be the Company's decision . . . to place you on a Decision Making Leave . . . . However, based on the outcome of the investigation of FMC's Welding Permit Policy it is the Company's decision to terminate your employment effective immediately.

Doc. No. 82-5. The Court finds there is no genuine dispute as to any material fact that Plaintiff's termination was based in part on her prior infractions. Accordingly, the Court further finds that Defendant Local 13214's decision not to object to the introduction of evidence of Plaintiff's prior infractions was not arbitrary, discriminatory, or in bad faith.

### E. Morlock's Alleged Undisclosed Conflict of Interest

The fifth issue the Court must consider is whether Mr. Morlock's alleged undisclosed conflict of interest was arbitrary, discriminatory, or done in bad faith; and it if was, whether the undisclosed conflict of interest contributed to an erroneous outcome. Plaintiff somewhat vaguely asserts that Mr. Morlock disliked her and therefore had an "undisclosed conflict of interest." Doc. No. 76. As evidence of this "undisclosed conflict of interest" Plaintiff points out that she and Mr. Morlock "tangled repeatedly over safety and worker's rights." Doc. No. 76. She also asserts that in an unrelated instance, she requested Mr. Morlock file a grievance and he refused. *Id.* Ultimately, that grievance was filed and granted after Plaintiff had been terminated. *Id.*

In *Menges*, the Tenth Circuit Court of Appeals considered a similar situation. *See* 385 Fed. App'x at 818 n.3. The court stated the following: "[The plaintiff] plainly believes that [his union representative] carried a grudge against him, but his speculation that this grudge resulted in a conspiracy to undermine his grievance is not sufficient to overcome summary judgment." *Id.* After reviewing the record, the court "found no evidence of fraudulent, deceitful, or dishonest conduct" on the part of his union representative. *Id.*

The allegations in the present case are similar to those in *Menges*. Here, the Plaintiff alleges that she "felt her union was against her and was setting her up to be terminated." Doc. No. 65. While Plaintiff may have felt her union was against her, she does not provide any evidence of fraudulent, deceitful, or dishonest conduct. Indeed, Defendant Local 13214 presented substantially the same evidence at Mr. Wold's arbitration as it did at Plaintiff's. Accordingly, the Court finds that there is no genuine dispute of any material fact that Defendant Local 13214's representation of Plaintiff was arbitrary, discriminatory, or done in bad faith because of the alleged "undisclosed conflict of interest."

### F. Defendant Local 13214 and Defendant FMC are entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim.

Finally, the Court must address whether Defendant Local 13214 and Defendant FMC are entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim. As discussed above, in order for a plaintiff to sue her employer for breach of a collective bargaining agreement, the plaintiff must first prove that the union breached its duty of

fair representation. *E.g.*, *Terry*, 494 U.S. at 568; *DelCostello*, 462 U.S. at 164. Based on the reasoning above, the Court finds that Defendant Local 13214 is entitled to judgment as a matter of law on Plaintiff's claim for breach of the duty of fair representation. As a result, Plaintiff cannot proceed against Defendant FMC. Accordingly, the Court finds that both Defendant Local 13214 and Defendant FMC are entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim.

### CONCLUSION

The Court finds that none of the alleged conduct on the part of Defendant FMC may reasonably be regarded as so extreme and outrageous as to permit recovery for the tort of intentional infliction of emotional distress. The Court also finds that Plaintiff's claim of intentional infliction of emotional distress against Defendant Local 13214 is preempted by § 301 of the LMRA. Accordingly, both Defendant FMC and Defendant Local 13214 are entitled to judgment as a matter of law on Plaintiff's claims of intentional infliction of emotional distress.

The Court further finds that there are no genuine issues of material fact that preclude it from granting summary judgment in favor of Defendant Local 13214 on Plaintiff's claim for breach of the duty of fair representation. As a result, both Defendant Local 13214 and Defendant FMC are entitled to judgment as a matter of law on Plaintiff's hybrid § 301 claim. Accordingly, it is therefore

**ORDERED** that Defendant Local 13214's motion for summary judgment (Doc. No. 64) shall be, and is **GRANTED. It is further**

**ORDERED** that Defendant FMC's motion for partial summary judgment (Doc. No. 66) shall be, and is **GRANTED.**

Dated this 18th day of November 2014.

Alan B. Johnson
United States District Judge